(84 South. 579)

No. 22418.

### GOODWIN v. BEENE.

(May 3, 1920.)

*(Syllabus by the Court.)*

**Assault and battery ⬤➡14—One making assault in belief that brother is in imminent danger not necessarily liable.**

A person appearing upon the scene of a fight and finding his brother lying upon his back, with one of his apparent antagonists bending over him and another standing by, may have reasonable ground for believing that his brother is in imminent danger of being killed or of suffering great bodily harm, and his intervention, by striking one of the men on the head with a stick, which he picks up at the moment, does not, of necessity, render him liable in damages for the injury thereby inflicted.

Appeal from Third Judicial District Court, Parish of Claiborne; J. E. Reynolds, Judge.

Action by John T. Goodwin against Claude Beene. Judgment for defendant, and plaintiff appeals. Affirmed.

Enos C. McClendon, of Homer, for appellant.

Goff & Barnette, of Arcadia, for appellee.

### Statement of the Case.

MONROE, C. J. Plaintiff prosecutes this appeal from a verdict and judgment rejecting his claim for damages, alleged to have been sustained by reason of personal injury resulting from a blow inflicted by defendant. He alleges that he was feloniously assaulted and beaten by defendant with a dangerous weapon, with intent to kill; that he was without fault; that he was knocked unconscious and helpless and forced to remain on the ground for several minutes, until taken up and removed from the street by his friends; that his skull was fractured, and he has not, since, been able (as he was prior to that time) to perform manual labor; that he has been embarrassed and humiliated, has lived under the shadow of much sorrow and distress, and in excruciating pain; that he believes that he is doomed to that condition for the remainder of his life, if, indeed, the number of his prospective years has not been reduced by one-half.

The allegata as thus recapitulated, and the probata, as disclosed by the record, are widely variant; not one of the allegations above recited being supported by evidence which would authorize its acceptance as proved, and most of them being, affirmatively and beyond controversy, disproved. The facts, as we find them, are as follows:

On January 15, 1915, plaintiff, his son, Ben, and Lloyd Beene (defendant's brother), were standing upon the corner of two streets, in Haynesville, which run east and west and north and south, respectively, and upon which there was a building, occupied by Miller & Beene as a store, which faced to the south, and against the west side of which, bordering a dirt banquette, there was a pile of wood, sawed and split for stove consumption. Ben Goodwin and Lloyd Beene were engaged in a dispute concerning a bill of which Beene was endeavoring to obtain payment. The elder, Goodwin, was standing a little to one side. The dispute having reached the fighting point, Beene, who was a lighter man than Goodwin, resorted to the woodpile, picked up a stick, measuring, say, two feet in length by an inch

and a half or two inches in thickness, and attacked Goodwin with it, striking three blows, which Goodwin warded off his head, or person, with his arm, and landed a blow with his fist upon Beene, who, either by reason of the blow or of his stumbling, fell backward on the woodpile, whereupon Ben Goodwin (to quote the language of the testimony) "made for him"; and the elder Goodwin (plaintiff herein), at the same time, intervened, for the purpose, according to testimony adduced by him, of separating the combatants, but, according to the testimony adduced by defendant, as a participant in the fight, upon the side of his son. He and his son testify that he threw the latter off some six feet, and it is undisputed that he then turned his attention to Beene, who, as is also undisputed, was lying on his back on the woodpile.

We find no corroboration of the testimony of the two Goodwins to the effect that Ben Goodwin was thus thrown back, and, even conceding it to be true, as he could have covered a distance of six feet in less than four seconds by moving at the rate of four miles an hour, and as his father was, in the meanwhile, pushing Beene back and holding him down, on the woodpile, the supposed separation was not very effective; and probably in less than four seconds, the tableau that was presented consisted of Beene, on his back, endeavoring to hold off both of the Goodwins, by the use of his feet, and of his hands, one of which was armed with a stick; the elder Goodwin bending over him, one or more of the witnesses say, with a stick in his hand, or feeling about for one, and the younger Goodwin standing immediately beside him. Save as to plaintiff's being armed, or seeking to arm himself, with a stick, there is no denial that the tableau was made up as thus described; plaintiff's explanation of his attitude being that he was bending over Beene because Beene had taken hold of his coat as a means of pulling himself up from his recumbent position. On the other hand, while the first witness called to the stand by plaintiff testifies that plaintiff was trying to separate the combatants (and that he, the witness, was making some effort in that direction), he also testifies that plaintiff's idea, as interpreted by his action, of the proper method to be adopted to accomplish the separation, was to hold the weaker combatant on his back, and that, as a matter of fact, the attempts at separation were not successful. In the meanwhile, also, that is to say, while the dispute between Ben Goodwin and Lloyd Beene was under way, and just before it had reached the fighting stage, Alvin Taylor, who testified as a witness called by plaintiff, had gone into the store and told Claude Beene that his brother, Lloyd, and Ben Goodwin were "fussing," and that he had better go out and quiet them, and Claude had acted upon that suggestion. When, however, he emerged from the back door, on the west side of the store, he found the Goodwins and his brother in the relative positions, as above stated, and he acted with reference to what he conceived to be the exigent demands of that situation; his testimony on that point reading as follows:

"Q. When you got there, what were they" (his brother and the Goodwins) "doing? A. They had him" (his brother) "down, and Mr. Goodwin was over him and Ben was by the side of Mr. Goodwin. Q. What did they have in their hands? A. Wood. Q. What did you do? A. I hit Mr. Goodwin, because he was right over him, in a position to knock his brains out, if he wanted to, and it looked like he was trying his best to do it."

Elton Baucum, the first witness called to the stand by plaintiff, gave the following testimony concerning the situation, as he saw it when defendant appeared on the scene, to wit:

"Q. What was John T. Goodwin doing at the time that Claude Beene struck him with the stick? A. He was separating or holding

Lloyd Beene down. Q. Separating who? A. Ben Goodwin and Lloyd Beene; he was holding them apart. Lloyd Beene was down on his back, on a pile of wood. * * * Q. Mr. Claude Beene, in his answer, sets up that John T. Goodwin was fighting Lloyd Beene; what do you say about John T. Goodwin fighting Lloyd Beene? A. He was not fighting him. * * * Q. Did you see Goodwin's hand on Lloyd at all? A. No, sir. Q. Did you see John T. Goodwin have hold of Ben Goodwin at all? A. He was keeping him back, pushing; holding them apart. He was mixed up like I was, trying to separate them. * * * Q. Well, what effect did John T. Goodwin's act of separating them have on Ben Goodwin? A. I don't know, sir; I don't know that it had any. Q. Did he move Ben Goodwin at all? A. No, sir; I don't know that he did. I never noticed that part of it. * * *"

On cross-examination: "Q. Now, where was Lloyd Beene at the time you speak of, when John T. Goodwin was trying to separate them? A. He was down on his back, on that pile of wood. Q. Lying down? A. Yes, sir; kind of fell up against it. * * * Q. Where was Ben Goodwin? A. He was all around there. Q. Was he down, too? A. No, sir; he was standing up. * * * Q. They were still fighting? A. Yes, sir. Q. Lloyd Beene was down? A. Yes, sir. Q. Ben Goodwin was up? A. Yes, sir. Q. Standing up? Q. Yes, sir. Q. Now, which is the larger man, Lloyd Beene or Ben Goodwin? A. Ben Goodwin seems to be the larger, I think. Q. Yet Goodwin, here, had hold of Lloyd Beene? A. No, sir; he pushed him back; kept him back on the wood. Q. Rather holding him back there; that was the effect of what he was doing; he was holding him there? A. Keeping him shoved back; pushed back. * * * Q. As a matter of fact, did you see Ben Goodwin when he ran off? A. Yes, sir. * * * Q. Now, when Claude Beene came up there, he came hurriedly? A. Yes, sir. Q. He ran? A. Yes, sir. Q. He ran up? A. Yes, sir. Q. Now, did you notice what Lloyd Beene was doing at that time? A. He was knocking and kicking and trying to get up. I suppose he was fighting; doing something. * * * Q. Trying to keep Goodwin and Ben both off? A. I don't know what he was doing; I suppose he was trying to get up."

Ben Bevil (called by plaintiff) testified that his attention was attracted by the rattling of the wood when Beene fell on it; that plaintiff was stooping over where Ben Goodwin and Beene were fighting, he supposes, "as though he was trying to separate them"; he could not tell whether he was fighting or not; he did not seem to be fighting; could not say whether he was pulling back from Beene, or whether he had anything in his hands. When he was struck by defendant, he fell to the ground, but got up, "right straight." He staggered a little, and witness took hold of him and pushed him against the wall.

"Q. You took hold of him and steadied him? A. I don't know that I took hold of him and steadied him; I took hold of him to get them to stop fighting. * * * Well, it was about like this; when I got to him, he had gotten up * * * and was asking who hit him, and when I got to him he was mighty nervous. Looked like he could not stand steady, and I took hold of the old man and told him he was too old to be fighting, and kind of pushed him back against the wall, and turned him loose, and told Claude Beene to go on back. * * * Q. As a matter of fact, he got up mad and wanted to know who hit him? A. Yes, sir; that is all I heard him say—wanted to know who had hit him."

Oscar Haynes (called by plaintiff) was somewhere to the southward when his attention was attracted by the fighting, and he approached and was within 20 or 25 feet of them when defendant struck plaintiff. He testifies as follows:

"Q. What was Mr. Goodwin, the man that was struck, doing at the time that Claude Beene struck him? A. There were two men standing up there and one on the wood. I did not know who it was until I walked up and the lick was struck, and one man broke and run, and Lloyd Beene was lying on the wood, and the two other men were kind of standing over him. * * * Q. Well, from where you were standing and from what you saw, did it look like Lloyd Beene and Ben Goodwin and the old man, John T. Goodwin, were all in the fight? A. Yes, sir; it looked like the three men were fighting. Lloyd Beene was down, and one was leaning over, and there were three, and one went off. * * * Q. After John T. Goodwin was hit, what did he do? A. He fell. Q. How long did he lay on the ground? A. No longer than he hit the ground; right down and up. Q. What did he do when he got up? A. He asked who hit

him, and some one told him Claude Beene, and he went on Claude Beene, and Claude Beene went back. He followed Claude down the side of the store, and he turned and come around to the front. Q. Did Mr. Goodwin say anything to Lloyd then? A. Yes, sir; at the front, in the street. Q. What did he say? A. Said something about fighting him, and I think Lloyd said something about— Well, as I remember, if Ben came on the street and started to whip him, he would pay the fine, and the old gentleman says, 'You cannot whip his old daddy,' and Lloyd said: 'I do not want to fight you; you are too old.' "

Alvin Taylor (called by plaintiff) was in the street, near by, and, hearing the loud talking between Lloyd Beene and Ben Goodwin, went in the store and told defendant that he had better go out and quiet them. He says, inter alia:

"Well, Lloyd Beene and Ben Goodwin were fighting and fussing, and Lloyd Beene was down on a pile of wood, and, when he was down, it looked like the old man was over him, and Claude was up there and hit the old man with a stick of wood. * * * Q. Do you know what he" (plaintiff) "was doing there—as a friend or as an enemy? A. I could not say what he was doing at that time, whether he was trying to fight or not. I could not say as to that. * * * Q. Did you see any person undertake to separate them" (Lloyd Beene and Ben Goodwin)? "A. Well, I don't know that I did. John T. Goodwin was there with them. I could not say whether he was trying to separate them or not. * * * Q. Did any one separate them? A. No, sir."

The impression made upon Lloyd Beene, Lynos Wynn, J. J. Waller, and C. H. Moss, witnesses called on behalf of defendant, was that plaintiff was engaged in the fight. Wynn testifies that he either had a stick in his hand, or was trying to pick up one, and Waller and Moss say that he had one. The testimony as to the size of the stick used by Claude Beene is to the effect that it was about two feet long and of the thickness of a man's wrist.

As to the extent of plaintiff's injuries, the witnesses, so far as they testify upon that point at all, are unanimous to the effect that he got up from the ground as soon as he fell, and that he received no assistance, save such as is testified to by Bevil. It is shown that he did not call in a physician until the afternoon of the day following the fight; that all that was then discovered was a swollen and bruised place where the blow had fallen; "the skin" (said the doctor in his testimony) "was swollen some, but not a great deal." The doctor made another visit about that time, and, once or twice, during the year that followed, plaintiff, on meeting him, complained of his head, and he was finally advised to consult an X-ray specialist, in Shreveport, which he did; and two of them testified that they found no fracture of the skull, but thought there might be a slight thickening of that member, to the extent of an eighth or sixteenth of an inch, but were unable to say whether it was normal or abnormal, or what caused it. Whether plaintiff was able, after receiving the blow in question, to work on his little farm, as he had done, is a matter about which no one knew anything save from what he said. He was seen plowing after receiving the blow, but not much, after the institution of this suit. He is shown to have been in the sixty-ninth year of his age at the time of the fight. There is some doubt whether the blow delivered by plaintiff was the sole, or merely a contributing, cause of his falling to the ground, since he seems to have fallen in a direction opposite to that from which the blow proceeded, and in that in which Lloyd Beene was kicking, and he arose instantly upon touching the ground, showing no indication of having been stunned.

### Opinion.

We are frequently obliged to make up our minds as to a man's intentions rather by what he does, at a particular moment, than by what he says afterwards. It may be that, in this instance, plaintiff's intention, in intervening in the fight between his son and

his son's smaller and presumably weaker opponent who had already been knocked or had fallen upon his back was to stop the fight; but it appears to us, as it probably appeared to the jury, that he would have displayed better judgment if he had taken hold of his son, who held the commanding position and was more likely to have understood his motive, instead of occupying himself with pushing and holding down the other man. Considering the situation as of the moment when defendant appeared on the scene, he had reasonable ground for the belief that his brother was in serious danger of being killed or of suffering great bodily harm, and that his instant and effective intervention was necessary to prevent the one or the other of those apparently imminent happenings. If he correctly interpreted the situation, his appearance might very well have precipitated the disaster which it was his duty as well as his natural desire to prevent, and common sense, as well as natural impulse, demanded that he should act promptly. We do not find that, in so doing, he exceeded what a reasonable man might properly have regarded as the exigent requirement of the occasion; and hence find no error in the verdict and judgment appealed from, which are, accordingly

Affirmed.